The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick and the brief and argument of defendant. Additionally, plaintiff was permitted to argue before the Full Commission, although no brief was filed on his behalf, pursuant to Industrial Commission Rule 801. Regarding plaintiffs assignments of error, pursuant to Industrial Commission Rule 701, plaintiffs appeal is hereby DISMISSED. With reference to defendants assignments of error, the Full Commission finds no good ground to receive further evidence or to amend the holding of the Deputy Commissioners Opinion and Award. However, pursuant to its authority under G.S.97-85, the Full Commission has modified the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement at the hearing on 24 August 1998 and by agreement subsequent thereto as:
 STIPULATIONS
1. On 11 June 1996 and 1 December 1996, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On those dates an employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. Defendants Exhibit Number Two, a letter from Ms. Joyce Croker dated 27 August 1998, is admitted into evidence.
4. Plaintiffs average weekly wage at all relevant times was $726.31.
 *********** EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Robert A. Appert, Dr. Robert Lacin and Dr. Hector Pedraza are OVERRULED, except the objections raised in Dr. Lacins deposition regarding a videotape allegedly depicting duties of a VMI tire builder are SUSTAINED.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff graduated from high school in 1969. Prior to beginning his employment with defendant, plaintiff worked as a warehouse manager for approximately five (5) years and had also worked as a cement truck driver for approximately four (4) years.
2. Defendant employed plaintiff for approximately eleven (11) years. When plaintiff began his employment with defendant, he worked in its curing department for approximately two (2) years. Next, plaintiff worked for defendant as a doper. Plaintiff then began working for defendant as a first stage tire builder, and held this position for between three and four (3-4) years. Finally, plaintiff worked for defendant as a VMI tire builder through 1996.
3. As a VMI tire builder, plaintiff operated a machine. To operate the tire building machine, plaintiff loaded it with beads and inner liners. An inner liner weighed approximately three (3) pounds and an entire bundle of beads weighed approximately twenty (20) pounds. Individual beads were fed into the machine two (2) at a time. Plaintiff also loaded the machine with steel that it then applied to the tire. The machine then combined the component parts and formed them into a tire.
4. After the machine completed its operation, plaintiff removed the tire, carried it and placed it onto a two-level conveyor. Plaintiff was not required to bend to remove the tire from the machine. The lower level of the conveyor was fifteen inches above the floor. The upper level was as high as plaintiffs waist, thereby obviating the need for him to bend to place the tire onto the conveyor. Tires ranged in weight between ten and twenty-five (10-25) pounds. In this manner, plaintiff built approximately two hundred and thirty (230) tires per day.
5. Plaintiff sustained an injury to his cervical spine on 11 June 1996 and defendant admitted plaintiffs right to compensation for this injury by accident. Thereafter, defendant began paying plaintiff temporary total disability compensation at the rate of $484.23 per week. Plaintiff underwent a C5-C6 cervical fusion surgery performed by Dr. Lacin on 18 September 1996.
6. On 11 March 1997 an Industrial Commission Form 21 Agreement for Compensation for Disability entered into by the parties was approved by the Commission. In this Form 21, the parties agreed that plaintiff sustained an injury by accident or contracted an occupational disease arising out of and in the course of his employment on 11 June 1996. The parties further agreed that plaintiffs injuries involved his neck and related surgery and that his disability began on 9 September 1996. Furthermore, the parties agreed that defendant undertook to pay plaintiff compensation at the rate of $484.23 per week for forty-five weeks for "15% PPD neck/back and that on 18 November 1996 plaintiff returned to work for defendant at an average weekly wage of $726.31.
7. Plaintiff initially worked in a light duty job following his return to work for defendant. However, in December 1996, plaintiff returned to work as a tire builder. At the hearing before the Deputy Commissioner on 24 August 1998, plaintiff testified that in December 1996 he was performing his usual duties for defendant, pushing a cart loaded with rubber. Plaintiff further testified was that as he was pushing the cart, one of the wheels struck a crack in the floor, causing the cart to come to a sudden stop and that he experienced the onset of pain in his low back and left leg. Plaintiff did not report this alleged incident to defendant. Defendant first learned of this alleged incident at the hearing before the Deputy Commissioner on 24 August 1998, during plaintiffs testimony.
8. On 4 February 1997, plaintiff returned to Dr. Lacin, who had treated plaintiffs cervical injury. On that date, plaintiff complained to Dr. Lacin of experiencing pain in his lower back and left leg. Dr. Lacin suspected that plaintiff had spondylolisthesis and ordered lumbar flexion x-rays for comparison with a post myleogram CT scan performed in July 1996. Based on his comparison of these studies, Dr. Lacin diagnosed plaintiff as having spondylolisthesis at L5-S1 and recommended decompression and fusion surgery that was performed on 29 April 1997.
9. Plaintiff received no treatment for his lumbar spine prior to 4 February 1997.
10. Plaintiff has had spondylolisthesis since his early childhood. Plaintiffs employment with defendant aggravated his spondylolisthesis.
11. The evidence of record is insufficient to prove that plaintiffs employment with defendant placed him at an increased risk of aggravating spondylolisthesis as compared to members of the general public not so employed.
12. There is no evidence of record that plaintiff sustained a substantial change of condition regarding his cervical spine injury since 11 March 1997, the date the Industrial Commission approved the parties Agreement for Compensation for Disability.
13. There is no evidence of record that plaintiffs spondylolisthesis at L5-S1 was caused, aggravated or accelerated by his cervical injury.
14. There is no evidence of record that plaintiffs spondylolisthesis at L5-S1 was caused, aggravated or accelerated by any unusual, unexpected or specific incident occurring during the performance of his employment with defendant.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Defendant, by its execution of the Industrial Commission Form 21 Agreement for Compensation for Disability did not admit the compensability of or its liability for the aggravation of plaintiffs lumbar spondylolisthesis. G.S. 97-2(6).
2. The aggravation of plaintiffs lumbar spondylolisthesis was not caused by an injury by accident arising out of and in the course of his employment with defendant. G.S. 97-2(6).
3. The aggravation of plaintiffs lumbar spondylolisthesis was not due causes or conditions that were characteristic of or peculiar to his employment with defendant and, therefore, is not an occupational disease. G.S. 97-53(13).
4. Plaintiff has not sustained a substantial change of condition regarding his cervical spine injury since the 11 March 1997 Award of the Industrial Commission. G.S. 97-47.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiffs claim for compensation relating to his lumbar spondylolisthesis must be, and the same is hereby DENIED.
2. Each party shall bear its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER